BALDWIN et al. v. DAVIDSON et al.—267 S. W. (2d) 756.

Middle Section. January 15, 1954.

Petition for Certiorari denied by Supreme Court, April 16, 1954.

R. C. Boyce, Jr., and Pattie L. Hilliard, both of Nashville, for appellant.

Wood & Wood, of Chattanooga, and Hofstetter & Hofstetter, of Nashville, for appellee.

FELTS, J.  This is a bill in equity brought by the three brothers, the children of a deceased brother, and a sister of J. D. Baldwin, deceased, against his other sister, Mrs. O. P. Brakefield, and his executor, B. W. Davidson, Sr., to have his will construed and declared void and inoperative.  The will, an holograph, is as follows:

"Sept. 16, 1948

"To Whom it May Concern:

"It is my wish & desire, because of a partnership between myself and P. B. Tichenor & B. W. Davidson, Sr., that should *any thing* happen to me to make it impossible to look after this business, that B. W. Davidson, Sr. shall have the right to sign my name on checks—Deeds—or in any other matter B. W. Davidson, Sr. shall have my complete power of attorney.  This is to keep the partnership complete until such time the partners shall sell the property & Business.  B. W. Davidson, Sr. shall turn over to my Sister Mrs. O. P. Brakefield my share to be distributed as she shall see fit.  B. W. Davidson, Sr. to act without bond."

(Signed)  "J. D. Baldwin"

When he wrote this paper J. D. Baldwin and his partners were operating a filling station business in Nashville under the name J. D. Baldwin & Company. On or about November 1, 1950 the partners organized a corporation in the name J. D. Baldwin & Company, Inc., and transferred the partnership property and business to the corporation in exchange for shares of stock in it.

J. D. Baldwin was unmarried, childless, and lived in Nashville in the home of his sister and her husband, the Reverend Mr. and Mrs. O. P. Brakefield. His other relatives lived away from Nashville, and while he was friendly with them, he was naturally closer and more affectionate to his sister who kept and cared for him in her home.

He died December 17, 1950, leaving an estate consisting of his shares of stock in J. D. Baldwin & Company, Inc., valued at $12,000, and other items of personalty amounting to about $6,000. He left as his next of kin Mrs. Brakefield and his other relatives, the complainants. The latter unsuccessfully contested the will in the Circuit Court before filing the present bill in the Chancery Court.

It is conceded on both sides that J. D. Baldwin died intestate as to all of his estate except his shares of stock representing his interest in the business of J. D. Baldwin & Company, Inc., formerly that of the partnership J. D. Baldwin & Company; and that if the will operate at all, it does so only as to this interest, as passing under this provision: "B. W. Davidson, Sr. shall turn over to my Sister Mrs. O. P. Brakefield my share to be distributed as she shall see fit."

The Chancellor held that this provision gave her no property but only a power; that the property was to be turned over to her not to use herself but to distribute to others as she saw fit; and that since the will did not name

the individuals or define the class to whom she was to distribute the property, the will was void for uncertainty, and the property passed by intestacy to the next of kin of the decedent.

Defendants appealed and assign this holding as error. Complainants also assign for error that the Chancellor should have gone further and held that the will was inoperative because the partnership property to which it referred had been sold, leaving nothing on which it could operate.

Upon this writing as a whole it seems clear that J. D. Baldwin intended (1) to enable his partners, in the event of his death, to keep the partnership complete until they could sell its property and business; and (2) to provide: "B. W. Davidson, Sr. shall turn over to my Sister Mrs. O. P. Brakefield my share to be distributed as she shall see fit."

What does this bequest give her in respect of the "share" to be turned over to her? Does it give her an interest in the property itself, or a mere naked power to dispose of it, or both? While there is no direct gift of any part of the property to her, all of it is to be turned over to her "to be distributed *as she shall see fit.*"

As we have seen, the learned Chancellor held that this provision gave her no right to use the property but required her to distribute it to others as she saw fit; and defendants argue that it was the testator's intent that she should distribute the property according to our statute of distribution.

We cannot agree with this view. There is no direction that she shall distribute the property or any part of it according to the law of distribution or in any other particular manner. Indeed, there is no direction at all as to

how she must distribute the property. It is to be turned over to her "to be distributed *as she shall see fit*"; that is, at her discretion or disposal.

There are no words expressing any intent on the part of the testator to create a trust—no direct fiduciary expressions, no precatory words, nor any words indicating that Mrs. Brakefield is given a power to be used in trust. The property is not given to her in trust or as trustee. There is no language controlling her in distributing the fund, or requiring her to give any part of it to any other person, or denying to her the beneficial ownership of it.

When it is turned over to her, as directed by the will, she may distribute one dollar to any other or others and the balance to herself, as she sees fit, and thereby act in strict accord with the power of appointment conferred upon her by the will.

So if it be said that the property is not in terms directly given to her, it must also be said that, as she is given a general and unlimited power to dispose of it as she sees fit, she can acquire it by exercising the power in favor of herself; for the donee of such a power may exercise it "for his own benefit" or for the benefit of others. Beasley v. Beasley, 33 Tenn. App. 195, 197, 230 S. W. (2d) 425, 426; 41 Am. Jur., Powers, Sec. 2, p. 806.

"* * * A will may give to any named person a power to appoint whom he pleases; and such powers are common and unquestionably good, as they are in substance gifts to the person named as donee of the power if he appropriate the property in the prescribed form." Rood on Wills, (2nd ed.), Sec. 438, pp. 378-379.

In his celebrated treatise, Sir Edward Sugden says:

"9. A devise to A. for life, expressly, with remainder to such persons as he shall by deed or will, or otherwise, appoint, will of course not give him the

absolute interest, although he may acquire it by the exercise of his power, and the rule applies to personal estate as well as to real estate.

"10. A, devise of property *to the discretion* of A. passes the fee, and does not merely confer a power: so a devise *at the disposition* of A. carries the fee. It is equivalent to a devise to A. *to give and sell at his pleasure.* There is no difference between a devise that A. shall do with the land at his discretion, and a devise of the land to A. to do with it at his discretion" (1 Sugden on Powers (3rd Am. Ed.), ch. III, Secs. 9 and 10, pp. 178-179).

In Theobald on Wills (8th Ed.), the rule is stated thus:

"1. A, devise of lands to be at the discretion of A, or of personal property to be at the disposal of A, or to be disposed of as A thinks fit without any direct gift to A, gives A the absolute property. Whiskon and Clayton's Case, 1 Leon. 156, [1588; 74 Eng. Re-print, 144]; Nowlan v. Walsh, 4 De G. & S. 584, [1851; 64 Eng. Reprint, 967; In re Maxwell's Will, 24 B. 246, [1857; 53 Eng. Reprint, 352]; Kellett v. Kellett, L. R. 3 H. L. 160, [1815; 3 Eng. Reprint, 1055]."

Considering the will in the light of the attending circumstances, we think it is clear the testator intended to give the property to Mrs. Brakefield, his favorite sister, to be at her discretion or to be disposed of as she sees fit; and that, upon the authorities above cited, it is clear that this amounted to an absolute gift of the property to her.

Such a gift of property to one to be disposed of as he shall see fit, which is good, is to be distinguished from a gift of property to one in trust or as trustee, to be disposed of as he shall see fit, which is void for uncertainty.

The cases followed by the Chancellor and relied on by complainants were gifts of the latter sort. Haskell v. Staples, 116 Me. 103, 100 A. 148, L. R. A. 1917D, 819; Fitzsimmons v. Harmon, 108 Me. 456, 81 A. 667, 37 L. R. A., N. S., 400; In re Ralston's Estate, 1 Cal. (2d) 724, 37 P. (2d) 76, 96 A. L. R. 953; Sears v. Rule, 45 Cal. App. (2d) 374, 114 P. (2d) 57; Egleston v. Trust Co., 147 Ga. 313, 93 S. E. 878, 3 A. L. R. 295; Clark v. Campbell, 82 N. H. 281, 133 A. 166, 45 A. L. R. 1433.

The reason for the distinction is this: In the former class of gifts the donee may exercise the power for himself and acquire the property; in the latter, the donee being a trustee, cannot acquire an interest in the property himself and no beneficiaries being named, the trust is void for uncertainty.

The different rules for the two classes of gifts are stated in Theobald on Wills (8th Ed.), pp. 543, 558, as follows:

"A devise of lands to be at the discretion of A, or of personal property to be at the disposal of A, or to be disposed of as A thinks fit without any direct gift to A, gives A the absolute property" (citing cases). p. 543.

"A gift to trustees upon trust to dispose of the same as they think fit is too uncertain to be carried out by the Court, and is therefore void" (citing cases). p. 558; see also Rood on Wills, (2nd Ed.), Sec. 438, pp. 378, 379.

The gift to Mrs. Brakefield being valid, it remains to consider whether it is inoperative, as insisted by complainants, because the partnership property was sold in the testator's lifetime so that the subject of the gift had ceased to exist at his death; in short, whether there was an ademption of this legacy to Mrs. Brakefield.

█ A specific legacy is adeemed if the thing given has been lost, or disposed of by the testator, or if its condition has been so changed that it no longer remains in specie. The governing principle is "that the subject of the gift is annihilated or its condition so altered that nothing remains to which the terms of the bequest can apply." Pritchard on Wills (2nd Ed.), Sec. 462, pp. 479-480.

As stated, when the testator made this will he, Davidson, and Tichenor had an oral partnership operating a filling station business under the name of J. D. Baldwin & Company. Later, Tichenor withdrew and John Futtrell was admitted as a partner. Thereafter, they incorporated the business under the name of J. D. Baldwin & Company, Inc., and continued the same business at the same location.

The thing given, the subject of this legacy, was J. D. Baldwin's share or interest in the business and property of the partnership J. D. Baldwin & Company. There was a shift of one of the partners and later a change to corporate form; but these were changes in name or form only, not changes in the nature or character of the business.

There was no change in the substance or essential nature of Baldwin's share or interest in the business. His shares of stock in J. D. Baldwin & Company, Inc., merely evidence his interest in the corporate business, which in turn represent his share in the partnership J. D. Baldwin & Company; and the real nature and identity of the thing given, the subject of the legacy, has been substantially preserved.

█ So this legacy was not adeemed by these formal and nominal changes in the personnel of the partnership and from partnership to corporate form. Wiggins v. Cheatham, 143 Tenn. 406, 225 S. W. 1040, 13 A. L. R. 169;

Fidelity Trust Co. v. Service Laundry Co., 160 Tenn. 57, 22 S. W. (2d) 6 (disregarding the fiction of corporate entity); Hankey v. French, 281 Mich. 454, 275 N. W. 206; In re Gerlach's Estate, 364 Pa. 207, 72 A. (2d) 271, 16 A. L. R. (2d) 1397.

For these reasons, the decree of the Chancery Court is reversed, a decree will be entered here as above indicated, and the cause will be remanded to that Court for further proceedings not inconsistent with this opinion. The costs of the appeal will be paid by the executor from funds in his hands belonging to the estate of decedent and he may take credit therefor in his settlement.

Howell, J., concurs.

Hickerson, J., not participating.